| STATE OF INDIANA | ) | IN THE CARROLL COUNTY SUPERIOR COURT |
|---|---|---|
| COUNTY OF CARROLL | )<br>) | CASE NUMBER: |

Eric J Mapes ,
      Petitioners/Plaintiff

vs.

HOME DEPOT Et al. ,
  **Respondent(s)/Defendant(s).**

## CIVIL COMPLAINT

```
   Pursuant to 28 U.S.C.§ 1746, I Eric J Mapes the Disabled
Plaintiff now files their civil complaint  hereby declare certify,
verify, and state as follows:
```

**Defendant's Name and Job Title :**                    **Address**

1. Ted Decker            **CEO**         2455 Paces Ferry Rd,,Atlanta, GA 30339

2. Teresa Wynn Roseborough   `VP and` **GENERAL** **Counsel**

3.Sonya Finely       `Executive Escalations`

                                                                          **Address**

3. `Chelsea    Home Depot Employee`    311 Sagamore Pkwy, Lafayette, IN 47904

4. `Home Depot Store Manager`        311 Sagamore Pkwy, Lafayette, IN 47904

5. Several (3 or more ))Unknown persons  HOME DEPOT contracted for services.

```
1. How many defendants are you suing?  8 Et al.

2. What is your address? 219 N. Union St. , Delphi, IN 4692

3. What is your telephone number: (765) 400-9732

4. Have you ever sued anyone for these exact same claims? NO
```

- 1 -

## I. INTRODUCTION

1. This is a case about the intentional abuse of one of society's most vulnerable citizens, a man with multiple disabilities, at the hands of Defendant(s) Et al. responsibility as a place of public accommodation to comply with Title III of the ADA.

3. Defendant(s) Et al.  actions as described herein were taken in accordance with their beliefs of someones rights , their policy , and/or practice and the deliberate indifferences and differential treatment they willfully and in concert subject the disabled Plaintiff to.

4. Defendant(s) Et al. violated the rights of the disabled Plaintiff under Title III of the the Americans with Disabilities Act.[ADA]

5.  This is an action for damages and other relief arising under the laws of the United States Title III of the the Americans with Disabilities Act.

## II. CLAIMS' and RELEVANT MATERIAL FACTS

6. My family and I purchased a new stove because Ours went out.

7. When we found out the stove was soon to be delivered we disconnected the bad stove and took it outside because HOME DEPOT was also paid to haul off the old stove.

8. We purchased a new stove , paid for installation services , and haul off and that delivery,installation and haul off was guaranteed on 18, February 2025

9. On 18, February 2025 the delivery driver contracted by HOME DEPOT arrived around or about 8:31 a.m. to delivery the stove. During that time the driver came in and asked where it was going and my wife and I showed the delivery driver where the old stove used to be.

10.  On 18, February 2025 the "delivery driver" then started making assessments and inspections of the gas valve that connects thew stove without holding or carrying a valid license in plumbing or any other certifications in plumbing to assess gas valves for stoves.Performing plumbing work without a valid license in Indiana carries serious legal consequences. Under Indiana Code 25-28.5-1-32, unlicensed plumbing is classified as a Class B misdemeanor.

11. On 18, February 2025 the delivery driver then refused to deliver our stove and refused the haul of services of which both were paid for and reloaded our delivery around or about 8:43 a.m. knowledgeable that our home was without a stove because the old one was outside waiting to be hauled off.

12.  On 18, February 2025 HOME DEPOT only sent out a delivery driver knowing an installation was part of the order to be fulfilled on 18, Fe4derbvruary 2025.

13. HOME DEPOTS of Lafayette Indiana reasoning for the refusal of delivery was based on their delivery drivers assessments.(See 5 above)

14. After being subjected to this fraudulent activity I sent a formal notice ( protected under 28 C.F.R. 36.206 ) to Ted Decker regarding the violations of Title III of the ADA .

15. I also forwarded this Notice to Teresa Wynn Roseborough , where I understand the General Counsel or any attorney for that matyter can not advise or assist their clients in violations of the law .

16. After that Notice was made I was contacted by Sonya Finely who assured me of an expeditious resolution. Sonya Finely and HOME DEPOT failed to comply with  28 C.F.R. § 36.506 Alternative means of dispute resolution. Where appropriate and to the extent authorized by law, the use of alternative means of dispute resolution ( why we filed a federal civil complaint), including settlement  28 C.F.R. § 36.504 )negotiations, conciliation, facilitation, mediation, fact finding, initrials, and arbitration, is encouraged to resolve disputes arising under the Act and this part.

17. In Sonya Finely's resolution , she states the Delivery Agency, and they advised that the range was not installed due to the on-site gas shut-off valve being compromised. They advised that they told you they'd need to arrange to have the plumber come out to replace the shut-off valve and install the appliance. ( Indiana Code 25-28.5-1-32,unlicensed plumbing)

18. In Sonya Finely's resolution , she states,  "they couldn't install the new one and didn't want to leave you without a working range" . . . We did not have a working range and why we order the new one and our old one was outside to be hauled off

19. In Sonya Finely's resolution , she is showing subjecting me to discrimination and using my disability characteristics to justify denial of services and goods and justification of the refusal of delivery leaving us without a working range and refusing to give us the working range we purchased on the day of delivery.

- 2 -

20. HOME DEPOT has now shown refusing services on the direct basis of my actual disabilities :

   1. I am legally disabled from a neurological voice disorder for over 20yrs. Spasmodic dysphonia (SD) is a neurological voice disorder that affects the voice muscles in the larynx, or voice box, causing it to "spasm." These spasms cause the voice to be interrupted and affect voice quality. SD can cause the voice to break up or to have a tight, strained, breathy, whispery or strangled quality. It sometimes sounds like a vocal tremor. There is no known cause for spasmodic dysphonia. Evidence suggests that the condition starts at the base of the brain in the basal ganglia, which regulates involuntary muscle movement. Typical symptoms of spasmodic dysphonia include: Voice breaks up Voice sounds breathy, whispery, strangled or tight Vocal tremor Hoarse voice Jerky voice Tremulous voice Intermittent voice breaks Effort required to produce voice Failure to maintain voice Breathy voice spasms

   2. I am legally disabled from other neurological conditions I have lived with since I was a child

   3. I am legally disabled and have lived a lifetime with severe mixed hearing loss from the age of 2.

   4. I am legally and physically handicapped.

   5. Under Federal law I am a vulnerable disabled adult living with multiple disabilities. . . hidden / invisible disabilities

   6. Disabilities are factually vulnerable medical conditions.

21. In HOME DEPOT Et al. resolution it shows HOME DEPOT and its employees as well 3rd party companies contracted by HOME DEPOT making opinions on the characteristics of my disabilities affirming not onl;y discrimination however  that the Defendant(s) Et al.  are  showing practicing medicine without a license under IC 25-22.5-8-1 Unlawful practice Sec. 1. Unlawful Practice. It is unlawful for any person to practice medicine or osteopathic medicine in this state without holding a license or permit to do so. Under IC 25-22.5-8-2 Offenses Sec. 2. (a) A person who knowingly or intentionally violates this article by unlawfully practicing medicine or osteopathic medicine commits a Level 5 felony (for a crime committed after June 30, 2014). The  Matthew Shepard and James Byrd Jr. Hate Crimes Prevention Act of 2009, 18 U.S.C. § 249 that was amended and shown a "crime" for someone to use "actual" or perceived disability of the disabled party experiencing it. ; See also Indiana House Bill 1020; See Indiana Senate Bill 198" also makes it a hate crime to use the protected characteristics of a persons disabilities

- 3 -

22. The Defendant(s) Et al. are not employed in any medical profession in the services they provide since HOME DEPOT is not a Drs office that provides medical services or medical opinions nor is the are licensed  to practice medicine or make opinions of the protected characteristics . . . nor is Defendant(s) Et al. licensed in behavioral health [ neurological disabilities] , Otolaryngology [neurological voice disorder ] , nor are they licensed in Ear Nose or Throat [ ENT ] ( severe mixed hearing loss ) to make such opinions.

23.The Defendant(s) Et al. clearly violeated Title III of the ADA 28 C.F.R. 36.206.

### III.   LEGAL ISSUES INVOLVED

24. The Americans with Disabilities Act was first introduced as H.R. 4498 and S. 2345(See 134 CONG. REC. 9357 (1988). The bill was referred jointly to the Committees on Education and Labor, the Judiciary, Energy and Commerce, and Public Works and Transportation Committees. See H.R. 4498, 100th Cong. (1988). These bills were the outgrowth of the work on the National Council on the Handicapped, an independent federal agency whose 15 members were appointed by President Reagan and confirmed by the Senate(See id. (statement of Senator Weicker in introducing S. 2345); see also 134 CONG. REc. 9382 (1988)(statement of Senator Harkin as chairman of the Subcommittee on the Handicapped). These two initial bills contained much broader anti-discrimination coverage than the bill that eventually was enacted as the Americans with Disabilities Act. Most notably, the definition of "disability" (which was then termed "on the basis of handicap") was much broader. In the initial bills, an individual had only to demonstrate that he or she was treated differently "because of aphysical or mental impairment, perceived impairment, or record of impairment." H.R. 4498, § 3(l). The term"physical or mental impairment" was also much broader, only requiring proof of a "physiological disorder or condition,cosmetic disfigurement, or anatomical loss affecting one or more systems of the body" or "any mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities." Id. At § 3(2).

25. Title III also prohibits private entities that own, operate, or lease places of public accommodation from discriminating against people with disabilities. Owners, operators, lessors, or lessees of places of public accommodation (42 U.S.C. § 12181) ("public accommodations") Title III defines a "public accommodation" as a private entity that owns, operates or leases (or leases to) a "place of public accommodation," which must fall within one of the following twelve categories: (A) an inn, hotel, motel, or other place of lodging; (B) a restaurant, bar, or other establishment serving food or drink; (C) a motion picture house,

- 4 -

theater, concert hall, stadium, or other place of exhibition entertainment; (D) an auditorium, convention center, lecture hall, or other place of public gathering; (E) a bakery, grocery store . . . shopping center, or other sales or rental establishment; (F) a laundromat, dry-cleaner, bank, barber shop, beauty shop, travel service, shoe repair service, funeral parlor, gas station, office of an accountant or lawyer, pharmacy, insurance office, professional office of a health care provider, hospital, or other service establishment; (G) a terminal, depot, or other station used for specified public transportation; (H) a museum, library, gallery, or other place of public display or collection; (I) a park, zoo, amusement park, or other place of recreation; (J) a nursery, elementary, secondary,undergraduate, or postgraduate private school, or other place of education; (K) a day care center, senior citizen center, homeless shelter, food bank, adoption agency, or other social service center establishment; and (L) agymnasium, health spa, bowling alley, golf course, or other place of exercise or recreation( See 42 U.S.C. § 12181(7); 28 C.F.R. § 36.104). Nonetheless, there are many non-traditional entities that have been found to be places of public accommodation. The ADA states that Title III entities must provide people with disabilities "full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations."(42 U.S.C. §§ 12182-12189; 28 C.F.R. § 36.303(c).

26. Discrimination under Title III includes refusal of services and services to ensure effective communication with people with disabilities.(42 U.S.C. § 12182(b)(2)(A)(iii)). At the time of the ADA's enactment, "[d]iscrimination against the handicapped was perceived by Congress to be most often the product, not of invidious animus, but rather of thoughtlessness and indifference—of benign neglect." S.H., 729 F.3d at 264 (brackets in original) (quoting Alexander v. Choate, 469 U.S. 287, 295 (1985)); see also Choate, 469 U.S. at 296 (noting that Senator Humphrey stated before the Senate, "[W]e can no longer tolerate the invisibility of the handicapped in America" (quoting 118 Cong. Rec. 525 (1972))). Accordingly, most circuits have recognized that "the deliberate indifference standard is better suited to the remedial goals of the ADA than is the discriminatory animus alternative." S.H., 729 F.3d at 264. The deliberate indifference standard best serves the ADA's purpose of deterring and curtailing a wide array of disability discrimination, not merely that motivated by prejudice.

27. Title III Regulations Supplementary Information , DEPARTMENT OF JUSTICE, 28 CFR Part 36 [CRT Docket No. 106; AG Order No. 3181-2010] RIN 1190–AA44 Nondiscrimination on the Basis of Disability by Public Accommodations and in Commercial Facilities , AGENCY: Department of Justice, Civil Rights Division. , ACTION: Final rule. . . . Under the final rule , Part 36 Nondiscrimination on the Basis of Disability in Public

Accommodations and Commercial Facilities (*as amended by the final rules published on August 11, 2016, and December 2, 2016*) 28 C.F.R. § 36.101 (a) Purpose. The purpose of this part is to implement title III of the Americans with Disabilities Act of 1990 (42 U.S.C. 12181–12189), as amended by the ADA Amendments Act of 2008 (ADA Amendments Act) (Public Law 110–325, 122 Stat. 3553 (2008)), which prohibits discrimination on the basis of disability by covered public accommodations and requires places of public accommodation and commercial facilities to be designed, constructed, and altered in compliance with the accessibility standards established by this part.

27.  28 C.F.R.  § 36.103 Relationship to other laws (a) *Rule of interpretation*. Except as otherwise provided in this part, this part shall not be construed to apply a lesser standard than the standards applied under title V of the Rehabilitation Act of 1973 (29 U.S.C. 791) or the regulations issued by Federal agencies pursuant to that title.

28. 28 C.F.R.  § 36.105 Definition of "disability."(a) (1) Disability means, with respect to an individual: (i) A physical or mental impairment that substantially limits one or more of the major life activities of such individual; (ii) A record of such an impairment; or (iii) Being regarded as having such an impairment as described in paragraph (f) of this section.

29. 28 C.F.R.  § 36.105 (b)(1) Physical or mental impairment means: (i) Any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems, such as: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genitourinary, immune, circulatory, hemic, lymphatic, skin, and endocrine; or (ii) Any mental or psychological disorder such as intellectual disability, organic brain syndrome, emotional or mental illness, and specific learning disability. .

30.  28 C.F.R.  § 36.105(b)(2) Physical or mental impairment includes, but is not limited to, contagious and noncontagious diseases and conditions such as the following: orthopedic, visual, speech and hearing impairments, cerebral palsy, epilepsy, muscular dystrophy, multiple sclerosis, cancer, heart disease, diabetes, intellectual disability, emotional illness, dyslexia and other specific learning disabilities, Attention Deficit Hyperactivity Disorder, Human Immunodeficiency Virus infection (whether symptomatic or asymptomatic), tuberculosis, drug addiction, and alcoholism.

31. 28 C.F.R.  § 36.201(a) *Prohibition of discrimination*. No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services,

facilities, privileges, advantages, or accommodations of any place of public accommodation by any private entity who owns, leases (or leases to), or operates a place of public accommodation.

32. 28 C.F.R. § 36.203(a)A public accommodation shall afford goods, services, facilities, privileges, advantages, and accommodations to an individual with a disability in the most integrated setting appropriate to the needs of the individual. (b) *Opportunity to participate*. Notwithstanding the existence of separate or different programs or activities provided in accordance with this subpart, a public accommodation shall not deny an individual with a disability an opportunity to participate in such programs or activities that are not separate or different. (c) *Accommodations and services*.

33. 28 C.F.R. § 36.302 (a) A public accommodation shall make reasonable modifications in policies, practices, or procedures, when the modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the public accommodation can demonstrate that making the modifications would fundamentally alter the nature of the goods, services, facilities, privileges, advantages, or accommodations.

34. 28 C.F.R. 36.206(a) No private or public entity shall discriminate against any individual because that individual has opposed any act or practice made unlawful by this part, or because that individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the Act or this part. (b) No private or public entity shall coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by the Act or this part. (c) Illustrations of conduct prohibited by this section include, but are not limited to: (1) Coercing an individual to deny or limit the benefits, services, or advantages to which he or she is entitled under the Act or this part; (2) Threatening, intimidating, or interfering with an individual with a disability who is seeking to obtain or use the goods, services, facilities, privileges, advantages, or accommodations of a public accommodation;

34. 28 C.F.R,§ 36.504 RELIEF  (3) May, to vindicate the public interest, assess a civil penalty against the entity in an amount (i) Not exceeding $50,000 for a first violation occurring before September 29, 1999, and not exceeding $55,000 for a first

violation occurring on or after September 29, 1999, and before April 28, 2014, and not exceeding $75,000 for a first violation occurring on or after April 28, 2014, except that, for civil penalties assessed after August 1, 2016, for a first violation occurring after November 2, 2015, the civil penalty shall not exceed the applicable amount set forth in 28 CFR 85.5. (ii) Not exceeding $100,000 for any subsequent violation occurring before September 29, 1999, and not exceeding $110,000 for any subsequent violation occurring on or after September 29, 1999, and before April 28, 2014, and not exceeding $150,000 for any subsequent violation occurring on or after April 28, 2014, except that, for civil penalties assessed after August 1, 2016, for any subsequent violation occurring after November 2, 2015, the civil penalty shall not exceed the applicable amount set forth in 28 CFR 85.5. ( 28 C.F.R,§ 36.504(3)(i). (ii)

35. The United States Supreme Court has defined retaliation as an intentional act in response to a protected action.[ exercise of any right] Jackson v. Birmingham Bd. of Educ., 544 U.S. 167, 173-74 (2005). Citing Jackson, the court in Gutierrez underscored the intentional nature of a retaliation complaint: "Retaliation is, by definition, an intentional act. It is a form of "discrimination" because the complainant is being subjected to differential treatment." Gutierrez, 2005 WL 2346956, at *5. The complained of matter need not be a complaint; it can be any lawful conduct that an individual engages in connected with a protected right.
"The very concept of retaliation is that the retaliating party takes action against the party retaliated against after, and because of, some action of the latter." Fed. Mar. Bd. v. Isbrandtsen Co., 356 U.S. 481, 514 (1958). ( See also 28 C.F.R. 36.206

36. Establishing intentional discrimination "does not require a showing of personal ill will or animosity toward the disabled person." Meagley v. City of Little Rock, 639 F.3d 384, 389 (8th Cir. 2011); accord Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 275 (2d Cir. 2009); Barber v. Colorado Dep't of Revenue, 562 F.3d 1222, 1228 (10th Cir. 2009).
Rather, intentional discrimination may be "inferred from HOME DEPOTs deliberate indifference to the strong likelihood that pursuit of its questioned policies will result in a violation of federally protected rights." Powers v. MJB Acquisition Corp., 184 F.3d 1147, 1153 (10 th Cir. 1999); accord Loeffler, 582 F.3d at 275; Mark H. v. Lemahieu, 513 F.3d 922, 938 (9th Cir. 2008).

- 8 -

Moreover, courts have recognized that "programs, services, or
activities" is a "catch-all phrase that prohibits
all discrimination by a public entity, regardless of the context."
Innovative Health Sys., Inc. v. City of White Plains, 117 F.3d 37,

37. Accordingly, the disabled Plaintiff seeking to prove intentional discrimination "must and has presented evidence that shows both: (1) knowledge that a federally protected right is substantially likely to be violated and (2)HOME DEPOTs failure to act despite that knowledge." S.H., 729 F.3d at 265 (citing Duvall v. County of Kitsap, 260 F.3d 1124, 1139 (9th Cir. 2001)). FedEx continues to fail to act despite these facts. The purpose of the intentional discrimination requirement is thus "not to measure the degree of institutional ill will toward a protected group, or to weigh competing institutional motives," but to ensure that the entity had notice that its actions might violate statutory prohibitions as a prerequisite to financial liability. Lovell v. Chandler, 303 F.3d 1039, 1057 (9th Cir. 2002).

38. HOME DEPOT is covered under and by Title III of the ADA, 42 U.S.C. §§ 12181-12189 et seq. and the relevant regulation implementing Title III, 28 C.F.R. pt. 36, prohibit discrimination on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation by any private entity that owns, leases (or leases to), or operates a place of public accommodation. 42 U.S.C. § 12182(a); 28 C.F.R. § 36.20l(a).

39. HOME DEPOT nor any place of public accommodation , shall not discriminate on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations provided through services  42 U.S.C. § 12182(a); 28 C.F.R. § 36.201; 28 C.F.R. 36.206(b) .

40. HOME DEPOT is a public accommodation subject to Title III of the ADA. 42 U.S.C. § 12181(7); 28 C.F.R. § 36.104 and it is uncertain how they are in compliance with Title III of the ADA, 42 U.S.C. § 12188(b)(I)(A)(i), 28 C.F.R. § 36.502(c) by their conduct on 2/18/2025  28 C.F.R. § 36.206 .

41. Under the law HOME DEPOT   Shall not deny individuals with disabilities the opportunity to participate in and benefit from the goods, services, facilities, privileges, advantages, and accommodations provided through FedEx and all it's services and services of other places of public accommodation. 42 U.S.C. § 12182(b)(I)(A)(i); 28 C.F.R. § 36.202(a) . FedEx  shall not provide individuals with disabilities an unequal opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, and accommodations provided through FedEx , all it's services and services of other places of public accommodation. . 42 U.S.C. § 12182(b)(I)(A)(ii); 28 C.F.R. § 36.202(b)

42. HOME DEPOTs conduct is unlawful and is in ongoing violation of  28 C.F.R. § 36.206(a) ,  28 C.F.R. § 36.206(b) ,   28 C.F.R. § 36.206(c)(1),(2),(3) as well other violations of U.S. and Federal laws and other consumer rights .

## IV. CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION

### VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

### ("ADA") (42 U.S.C. §§ 12181 et seq./28 CFR Part 36)

### (Authority: 5 U.S.C. 301;28 U.S.C. 509, 510; 42 U.S.C.

### 12186(b).))    28 C.F.R. § 36.504 Relief

43. Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

44. Title III of the ADA, 42 U.S.C. §12181 et seq. and the regulations thereunder, 28 C.F.R. Part 36, places of public accommodation , protects persons from discrimination on the basis of disability by public entities. The Plaintiff has multiple disabilities  previously and is a protected person under the ADA.

45. The ADA prohibits the exclusion from participation in, or being denied the benefits of the services, programs, or activities of the private or public entity[ places of public accommodation], or being subjected to discrimination by such places of public accommodation.

46. The discriminatory practices described herein excluded Plaintiff from participating in and receiving the benefits of the goods and services of purchased services and product.

47. The Defendant's practices after they were placed on notice were intentionally discriminatory and exhibited a deliberate indifference to the strong likelihood that the pursuit of these practices would result in a violation of Plaintiff's federally protected rights under the ADA.

48. Each of the Defendants violated Plaintiff's rights under the ADA and the regulations promulgated thereunder, denying Plaintiff the benefits of the services and goods on the direct basis of the Plaintiff's disabilities.

49. Plaintiff was mistreated in violation of law as a direct result of his disabilities, the characteristics of these disabilities , and the manifestation of these disabilities.

50. As a direct and proximate result of Defendants' violation of the ADA, Plaintiff has no way to cook food and has suffered including, but not limited to, humiliation, anxiety, mental anguish and  emotional distress

**PRAYER FOR RELIEF**

   WHEREFORE, the Plaintiff respectfully requests that this Court enter judgment in her favor against each of the Defendants, and award him  all relief allowed by law, including but not limited to the following:

(a) Appropriate relief at law and equity;

(b) Declaratory relief and other appropriate equitable relief;

(c) Compensatory, consequential and future damages, including damages for emotional distress(mental abuse),discrimination, fraud, violations of the Americans with Disabilities Act(28 C.F.R. 36.504(3)(i),(ii))

(d) Punitive damages on all claims allowed by law and in an amount to be determined at trial;

(g) Any further relief that this court deems just and proper, and any other relief as allowed by law.

   **Finally**, the Disabled Plaintiff demands judgment against the Defendant(s) Et al.  individually, jointly and severally  for violations of the ADA in the amount of Seventy-five thousand dollars( $75,000 ) , plus punitive damages , interest, and whatever other relief the Court deems just and equitable.

  Respectfully submitted in good faith

        Executed on this 19 of February in the year 2025

                                "All Rights Reserved:
By Authorized Representative: Mr Eric-Joshua: Mapes. , Sui juris
                                UCC 1-207/1-308 UCC 1-103 ]

                                    Under Duress

                                 Without Recourse

- 10 -

**CERTIFICATE OF SERVICE**

    I hereby certify that on this 19 of February , 2025, the foregoing **PLAINTIFF'S SUMMONS AND CIVIL COMPLAINT**  has been electronically filed with the Court and service upon the Defendant(s) Et. Has been served via Efile and Serve.**to** :

1. **T**eresa Wynn Roseborough ,VP and <u>" **General Counsel**"</u>
    HOME DEPOT
    2455 Paces Ferry Rd,
    Atlanta, GA 30339
     teresa_w_roseborough@homedepot.com


2. Ted Decker
    Chair, President & Chief Executive Officer
    HOME DEPOT
    2455 Paces Ferry Rd,
    Atlanta, GA 30339
     ted_decker@homedepot.com

3. Sonya Finley
   Executive Esculation
    HOME DEPOT
    2455 Paces Ferry Rd,
    Atlanta, GA 30339

 By Authorized Representative: Mr Eric-Joshua: Mapes. , Sui juris
                                UCC 1-207/1-308 UCC 1-103 "


**Copies on File
     1 of 6**

- 11 -